```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3   MICHAEL GARLAND,                )
                                     )
 4              Plaintiff,           )
                                     )
 5          vs.                      )  No. 19 C 07560
                                     )
 6   EXELON CORP.,                   )  Chicago, Illinois
     COMMONWEALTH EDISON CO.,        )
 7   JESSICA MANGUM-ALLEN,           )  December 14, 2021
     YVETTE DANIELS, KATHY EGAN,     )
 8   ROSEMARY COLELLA-SEAVEY, and    )  9:02 a.m.
     CRAIG WEBER,                    )
 9                                   )
                Defendants.          )
10

11       TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS HEARING

12           BEFORE THE HONORABLE ANDREA R. WOOD

13
     APPEARANCES:
14
     For the Plaintiff:     MR. MICHAEL GARLAND, Pro Se
15                          949 North Willard Court, Unit 401
                            Chicago, Illinois 60642
16                          (630) 306-2995
                            mike.garland14@gmail.com
17
     For the Defendants:    MORGAN, LEWIS & BOCKIUS, LLP
18                          BY:  MR. JAMES P. LOOBY
                            110 North Wacker Drive, Suite 2800
19                          Chicago, Illinois 60606
                            (312) 324-1000
20                          james.looby@morganlewis.com

21


22
     Court Reporter:        Brenda S. Tannehill, CSR, RPR, CRR
23                          Official Court Reporter
                            219 South Dearborn Street, Suite 1928
24                          Chicago, Illinois 60604
                            (312) 554-8931
25                          brenda_tannehill@ilnd.uscourts.gov
```

1        (Proceedings held remotely, via telephone:)

2        THE COURT:  Good morning.  This is Judge Wood joining

3  the line.  I believe we're ready to get started with the first

4  case, so I am going to have my courtroom deputy call the case,

5  and then we'll see who all we have on the line.

6        David, go ahead.

7        THE CLERK:  19 C 7560, Garland versus Exelon Corp,

8  et al., for show cause and status.

9        THE COURT:  Do we have Mr. Garland on the line?

10        MR. GARLAND:  Yes, you do.

11        THE COURT:  Okay.  Thank you, Mr. Garland.

12        Do we have counsel for Exelon?

13        MR. LOOBY:  You do, Your Honor.  Good morning.

14  James Looby on behalf of defendants.

15        THE COURT:  Okay.  Mr. Garland, I never received a

16  response to defendant's motion to dismiss from you.  Even

17  though you asked for an extension of time, I believe you

18  didn't file by that date.  Or actually, I don't know that you

19  did ask for an extension of time.

20        What's going on?  Why haven't you responded to the

21  motion to dismiss?

22        MR. GARLAND:  Your Honor, thank you, first.

23        So I've spent some time doing some research.

24  Obviously, I'm pro se, but based on the current proceedings

25  and what's occurred since the case has been removed to federal

1    court and the circumstances with ComEd and Exelon and this

2    bribery scandal thing they've got going on, I believe I have

3    significant evidence that warrants a petition for a writ of

4    certiori which will -- I will ask that you release the records

5    of this case to the higher court for review, to review the

6    substance of the proceedings and what's taken place so far.

7           There's things that happened during this case and

8    time delays and certain things in your orders and things that

9    the attorneys for Exelon and ComEd did and things that Exelon

10    did as well through their general counsel, Susan Rider, that

11    pertains to this case which, to me, is pretty serious.  And

12    it's pretty serious to the federal investigators that are

13    working on the bribery case right now because that's ongoing.

14    So that's why it's taken a while.  I couldn't really respond

15    because I had to get my information together.

16           It's been a long time that I've been in this court.

17    I don't believe I belong here.  I think I should have been in

18    state court a while back.  And, you know, of course, everybody

19    does believe that, but I have evidence to actually contest it,

20    and if the Court of Appeals agrees, then I'll go back to state

21    court or -- and then we'll proceed further.

22           I mean, on the record, I can tell you -- if you want,

23    I can explain some things.  I mean, I don't have anything to

24    hide.  I mean, so in ten days from now, I'm going to file a

25    petition for a writ of certiori.

1   If this case is delayed or you say that I've wasted

2 time or something, I really didn't because from the time that

3 you took over this case to the time that you filed the

4 response to deny my motion to remand, it was 262 days.  That's

5 a long time.

6   In my case, I had 115 pages, 26 claims against a

7 so-called corrupt company that I deserved to get justice on.

8 I deserved a fair trial.  And based on your court records, you

9 didn't stop during that time when you were issuing orders and

10 continuing on with your business, but for some reason, it took

11 262 days to respond to my -- or to file an order denying my

12 remand.

13   So there's certain things that I did beforehand

14 because I knew something like this was going to take place

15 because Susan Rider from Exelon told me it was going to take

16 place.

17   If you look in the motion to remand, I basically said

18 it straight up that her plan was to remove the case to federal

19 court and stretch it out five years and exhaust my financial

20 resources.  I said that for a reason, because:  One, I had to

21 establish the law firm that was going to do it; and two, the

22 judge that was going to do it.  Because the only way they

23 could do it would be through a law firm and a judge, right?

24   So when Susan Rider from Exelon controls this whole

25 case, when she said that, she had an opportunity to settle

1  with me or to make things right or whatever, but she didn't,

2  which is totally fine.  And then she hired Morgan Lewis.  And

3  through Morgan Lewis, they assigned Stephanie Sweitzer who is

4  the partner, who's a partner.  Therefore, the things that she

5  did, false statements, deception, whatever you want to call

6  it, that I put in all my papers that you didn't review fall

7  back on the law firm, they fall back on Morgan Lewis.

8          This case is sensitive because it has to do with this

9  bribery thing because Ann Pramaggiore is Exelon's CEO that was

10 involved in this bribery thing, but she was the CEO of ComEd.

11         And my complaint still is that ComEd was

12 catastrophically -- had catastrophic failure all the way down

13 the chain.  So when this occurred with this whole news and all

14 that other stuff, I filed my complaint at the same time.

15         So when I filed my complaint at the same time, the

16 day I filed it, they announced this thing around the world.

17 And at the same time when they did, the following day, the

18 president and CEO, Joe Dominguez, had a call with the whole

19 company, ComEd, saying, "This is what happened" and all that

20 stuff, which, to an effect, would mean that all these ComEd

21 leaders would have to stop what they're doing and start

22 behaving.

23         Okay.  So then I meet with Susan Rider, and we go

24 over this stuff.  She says she wants to settle, then she

25 doesn't settle.  Then she tries to intimidate me or whatever

1     it is or however.  It doesn't matter.  But when we talked, I

2     told her I was going to pull these poll surveys, these yearly

3     poll surveys.  They're important to the company.  They can

4     tell what the management does.

5             Well, she had those poll surveys stopped on

6     December 3rd and had Susan Kutansky and Joe Dominguez or

7     whoever send out an email to the ComEd leaders privately that

8     I later got from my manager who is an individual defendant,

9     Kathy Egan, that shows that they basically stopped these

10    surveys, which is obstruction of justice, and that all the

11    ComEd leaders were involved with it.  So this in itself and

12    these other things that happened after the fact are

13    obstruction of justice.

14            And at the time, Morgan Lewis was hired, so

15    Morgan Lewis, Susan Rider from Exelon, James Looby,

16    Stephanie Sweitzer and ComEd, Susan Kutansky, and

17    Joe Dominguez all conspired to go and put a stop to these poll

18    surveys, which I have the email and all that stuff.

19            So that's basically to hide the fact that these

20    leaders are doing these bad things.  And they haven't restored

21    the surveys for two years, and it's been -- and I can show

22    what happened because of that.  But that in itself just shows

23    obstruction of justice right there.

24            So when they removed this action, what I needed is

25    for the judge, which was either Judge Pacold or you, to delay

1    this case just like she said you would.

2           So Judge Pacold, when she took the case, she stated

3    that she knew somebody at ComEd, that they might be friends,

4    it might be a conflict of interest.  She looked at my motion

5    to remand and all that stuff.  She ignored my concerns that

6    the defendant law firm didn't have anybody sign the paper or

7    consent, they didn't submit any summonses, and she ignored it.

8    So I recused her.

9           When you took over, you had a duty to tell me that

10   you knew somebody at Morgan Lewis, Mikaela Shaw.  She worked

11   for you.  She's an employment attorney from James Looby and

12   Stephanie Sweitzer's party.  It's a conflict of interest, but

13   you didn't tell me that.  Okay?

14          The second thing is you should have -- based on my

15   research, you should have wrote up this -- or you should have

16   reviewed my motion to remand right away because if you talked

17   to Susan Pacold, then you knew what was going on.  You knew

18   that the issue was that she knew somebody at ComEd, so you had

19   a duty to tell me the issue that you knew somebody at

20   Morgan Lewis.  You didn't.

21          And then the issue was that she didn't address the

22   raised defects, and then you didn't address the raised

23   defects.

24          And then you asked us to provide a joint status

25   report in which I placed -- I put all my complaints or all my

1    issues.  And then when we met to discuss it and I included the

2    fact that there was deception and all the other stuff, I began

3    to argue about it, and you cut me off.  And then when you cut

4    me off, I left; and 262 days later, you issued an order

5    denying my remand.

6         How am I going to fairly go after my -- pursue my

7    case when 262 days have passed?  I'm thinking that it was all

8    COVID, and then I go look in your record, and you were busy

9    the whole time since.

10        When you issued my order denying the remand, your

11   statements are the same as the statements for notice of

12   removal.  You didn't review my motion, the memorandum in reply

13   for support or whatever of remand, because in the conclusion,

14   where I said, "Wherefore," I stated that I wanted you to

15   investigate deceptive practices and these other things as

16   plain as day.

17        Did you not review that paper because it said that

18   because you're avoiding the fact that there was issues and

19   there was deceptive actions?  Were you supporting that?  I

20   don't know.

21        You've ruled in favor of the attorneys for the

22   consent rule, but you ignored all my case law, Seventh Circuit

23   court case law, five famous case laws.

24        And you said that because Stephanie Sweitzer signed

25   the paper, that means that they consented.  That doesn't --

1    that's not even in effect.  That was gone in 2011 in the JVCA.

2         The whole purpose of the consent rule was to not have

3    the attorney sign it.  That's well known in the Seventh

4    Circuit, but you didn't provide any case law to support it.

5         And then when I told you and I stated that there was

6    no summons, that the attorneys didn't submit any summonses for

7    seven defendants that I served with a professional server,

8    they accused -- Exelon said that they never were served.  They

9    lied.

10        I served the proof of service affidavits, and

11   Stephanie Sweitzer got them.  It shows it on the email when

12   she put her declaration together.  She says that she sent the

13   runner down there to purchase them, but yet they didn't say

14   it.

15        So why did Susan Rider that's a lawyer herself for

16   Exelon and Morgan Lewis lie about Exelon's service?  Why is a

17   professional law firm lying in this case, and why do I have to

18   deal with this?  I haven't lied at all.

19        You know, the other thing is the summons.  The five

20   individual defendants, I sued them individually with state

21   court actions.  They have a right to decide in state whether

22   they belong, whether they are cool with individually fighting

23   state court claims in federal court, and I argued that, and

24   you ignored it.

25        And I can prove that they had summonses, but they

1    haven't -- they haven't even submitted them.  So how could you

2    even -- I don't even know how you could even have jurisdiction

3    if they don't even have the summonses.  Maybe you can because

4    they had the complaint, but that's something that the Court of

5    Appeals needs to determine because if they had those summonses

6    and they knew it and you ignored it, then that's something

7    that needs to be raised, an issue that needs to be raised.

8              The other issue is the time delays.

9              And then the third issue is the published -- is that

10   your orders aren't published.  And presumably, courts publish

11   papers to alleviate concerns, to provide a way for interested

12   members of the public to review court actions in an area of

13   law and to show accountability.

14             I think Rule 35(c)(1) of the Circuit Court rule of

15   the United States Court of Appeals, the Seventh Circuit

16   identified decisions warranting publication.  The public's

17   opinion will be filed when the decision establishes a new or

18   change of existing rule or law, -- you were changing a rule or

19   law because you said that it wasn't -- a consent rule wasn't

20   valid -- criticizes or questions existing law, -- which you

21   did -- constitutes a significant and nonduplicative

22   contribution to legal literature, historical review --

23   (inaudible) -- describing legislative history or resolving and

24   creating conflict in the law, -- which there was a conflict of

25   law -- reverse a judgment, denies enforcement of an order

1    where a lower court or agency has published an opinion

2    supporting the judgment or order -- I had other case law that

3    was from the Seventh Circuit that was contradictory to what

4    you stated -- and is pursuant to an order of remand from the

5    Supreme Court is not rendered merely an administerial --

6    whatever.

7           The orders in this case that you issued meet the

8    above criteria and should have been published.  Why weren't

9    they published?  That's the question.

10          The other thing is I filed a motion for

11   reconsideration, and you told me I took an -- I rehashed all

12   these, like an umbrage, rehashed whatever my arguments were.

13          I wasn't rehashing my arguments.  I gave you all the

14   history before 2011 of the consent rule in the Seventh

15   Circuit.  I gave you multiple case law of the consent rule

16   after 2011 when this went into effect.  You ignored all of it.

17          I told you that if you ruled differently that you

18   would shift the Seventh Circuit paradigm.  You didn't respond.

19   You didn't care.

20          I told you that Morgan Lewis just got in trouble in

21   California and were fined $500,000 for document dumping.  You

22   ignored it.

23          I told you that James Looby lied about the summonses.

24   You ignored it.

25          You know, so I don't know -- and then you told me --

1   and then when I asked for an appeal, you told me it doesn't

2   meet the criteria for an appeal.

3          Well, I found out that 1447(c), defects in procedure,

4   don't even require an appeal, so I can appeal right away

5   regardless of that saying whether or not I need you.

6          So all these things that occurred I don't understand.

7   I've never been in court before.  And, you know, during this

8   whole course of events, my two best friends killed themselves.

9   I could have been there for them and been a good friend, had I

10  not been so distracted by this nonsense.

11         And I'm not accusing you or anybody of all these

12  things.  I'm stating the facts that I need someone higher than

13  yourself to review and tell me if I'm correct, tell me if I'm

14  not losing my mind, because it's been -- it's been -- it's

15  been a long time.

16         You know, so the other thing, too, is that

17  Joe Dominguez and Chris Crane -- Joe Dominguez is the

18  president of ComEd who acknowledged this whole bribery thing

19  and said that he was going to -- that ComEd made all these

20  reparations and all this stuff and they're going to do this

21  and that.  They haven't done anything.

22         And based on hiding the performance reviews and this

23  stuff right here, that shows that you may have been influenced

24  by them and might sway my case to cover up or hide from the

25  investigators the truth about the management that's operating

1    underneath Ann Pramaggiore.  That's something -- the statement

2    he made is not -- it's a lie.

3          Chris Crane said the same thing.  He said that they

4    made these reparations, they're not going to do all this

5    stuff.  I mean, I have the thing.

6          And then part of this deferment plan that ComEd went

7    through and they agreed to pay this $200 million to -- it's a

8    big deal because they actually paid -- they got a break.  The

9    minimum fine was 240 million.  They paid 200 million because

10   they worked and cooperated, but according to -- this is based

11   on a $480 million top range.

12         It says ComEd -- so ComEd acknowledges and agrees

13   that the government will file the accompanying information in

14   the United States District Court for the Northern District of

15   Illinois charging ComEd with bribery in violation of Title 18

16   United States Section 666(a)(2) or whatever.

17         So in this breach of agreement -- sorry.  I don't

18   have it written down because it's so much information.  It

19   says under the deferment, "In the case of an event, the

20   government, however, may use any information related to the

21   conduct described in the deferment statement of facts against

22   ComEd in a prosecution for perjury or obstruction of justice,

23   in prosecution for making a false statement, in prosecution of

24   other proceeding relating to violation or any provision of

25   Title 26 of the United States Code.  This agreement does not

1   provide any protection against prosecution for any future

2   conduct by ComEd or any of its present or former parents or

3   subsidiaries.

4          In addition, this agreement does not provide any

5   protection as to prosecution of individuals regardless of

6   their affiliation with ComEd or with any of its present or

7   former parents or subsidiaries.

8          ComEd represents that it has implemented and will

9   continue to implement a compliance and ethics program designed

10  to prevent and detect violations in US law throughout its

11  operations including those of its subsidiaries, agents, and

12  joint ventures and those of its contractors and

13  subcontractors.

14         If, during the term, ComEd commits any felony under

15  US law, ComEd provides in connection with this agreement

16  deliberately false, incomplete, or misleading information,

17  including in connection with the disclosure of information

18  about individual culpability; ComEd fails to implement a

19  compliance program as set forth in this agreement and

20  Attachment B; or ComEd otherwise fails to completely perform

21  or fulfill each of its obligations under the agreement; or if

22  at any time ComEd fails to cooperate as set forth in its

23  agreement regardless of whether the government becomes aware

24  of such a breach after the term is complete, ComEd shall

25  thereafter be subject to prosecution for any federal criminal

1   violation of which the government has knowledge, including,

2   but not limited to, the conduct described in the attached

3   statement of facts which may be pursued by the government in

4   the US District Court for Northern Illinois or any other

5   appropriate venue.

6        Determination of whether ComEd has breached the

7   agreement and whether to pursue the prosecution of ComEd shall

8   be in the government's sole discretion.  Any such prosecution

9   may be premised on information provided by ComEd or its

10   personnel."

11        So the issue here is that you were recently involved

12   in a case with Martin Sandoval who was involved with ComEd as

13   well.  His daughter works for ComEd so that John Lausch -- I

14   believe he's the attorney prosecuting.  He was the attorney in

15   that case, and I believe he's the attorney for ComEd.

16        So when I prepare this writ, the petition, and I file

17   it in ten days, technically, I'll have to share it with them

18   because what occurred has something to do with this case

19   that's going on now.  It's a letter from -- I don't think I've

20   really explained everything, you know, but --

21        THE COURT:  So Mr. Garland, I understand that you

22   have a lot of concerns, but I still don't quite have an answer

23   to the question of why you didn't pursue the case here and

24   oppose the motion to dismiss and potentially go forward here,

25   ask for discovery, try to get a judgment here, follow it the

1   same way that you would have done if you had stayed in state

2   court.  So I never got a response.

3          And if you are going to petition for the right to

4   appeal to the Court of Appeals, why are you not also trying to

5   move the case forward here and, instead, I don't hear from you

6   for a period of time?

7          MR. GARLAND:  Because I would have to -- I would have

8   to go through, and the defendants wrote a 50-page motion to

9   dismiss.  I have to -- I'm pro se.  I'm not even a lawyer.

10  I'm just -- I'm struggling here in the first place as it is.

11         I don't even know how I got this far.  I shouldn't

12  have to be this far, really, but why would I go and have to go

13  struggle to find all these case laws and fight issues that --

14  and write this paper?  It would take me a year.

15         I've already -- so from the time that you -- we

16  submitted this joint status report to now and you chose this

17  day, which is today, it's been 666 days, 666, that many days.

18         So I can't -- I mean, for me to go and -- what if I

19  go and respond to the attorneys' motion to dismiss eight

20  months later, then all of a sudden, it goes back to state

21  court?

22         I mean, the incidents that occurred in my complaint

23  began in 2016.  One of my witnesses already retired.  I mean,

24  he's still a witness.

25         You know, has ComEd improved since my complaint?  No.

1   It's probably worse.  Am I popular there?  Yeah.  Do I know

2   people?  Yes.  Did I get a lot of people to be witnesses on

3   things?  Yeah, but I need them to -- it would benefit -- how

4   could you really say that I should spend the time to respond

5   to a 50-page motion to dismiss in a court that I might not

6   even belong in?

7           You know, so it's just -- I don't -- it's hard for me

8   to understand.  Like, I don't know what to expect because I've

9   never really been in this court.

10          I have the answers to the questions that you provided

11  in 2013 when you became a judge.  You answered questions from

12  the Senate.  You provided these promises of how you would

13  pursue litigation.

14          You know, the case that you had against Fed Ex, you

15  issued a motion to remand.  You stated the same case law that

16  I stated in mine, but you didn't state it in mine.  You

17  disregarded it.  So I don't know what's going on here.

18          I'm not saying -- I need someone -- I'm by myself,

19  you know.  I think, you know, Exelon spent $6 million or more

20  with Morgan Lewis.  They're a great law firm.  They're really

21  big.  They've got a lot of resources.  They have unlimited

22  access to data, experience.  I have a laptop, and I have a

23  full-time job.

24          I expected something completely different when I came

25  here to this court.  I thought that things would go

1   differently, but I'm not the one to say if it should have went

2   differently.  I can't make that decision because I've never

3   really been here.  All I can go on is previous case law, and I

4   just really can't wrap my head around it to understand really

5   what happened.

6          If these things did happen where I was denied where

7   you were partial or you weren't impartial, I don't know why.

8   The higher court or somebody has to tell me why.  And if you

9   were impartial, they need to tell me that, too, because it's

10  been a rough two years.

11         The other thing is if Morgan Lewis is such a high-end

12  law firm, I ask you just to hold them responsible for things

13  that I saw that were fraudulent and false, deceptive,

14  misleading.  And I need the higher court or ARDC or the

15  professional lawyers to tell me if they were indeed deceptive,

16  lied, had things and shouldn't have lied because it's not --

17  there's rules of professional conduct.  I went through it 50

18  times.  Based on what I've seen, James Looby and

19  Stephanie Sweitzer violated the rules of professional conduct

20  a lot.

21         And I can't read it, all the stuff I have written

22  down, but it's easier for me to speak in front of the panel of

23  judges.

24         And also, Susan Rider from Exelon, she told me in an

25  email that she's been a lawyer for 30 years.  So she was in

1   on -- she did some stuff that would have violated the rules of

2   conduct, too.  So does that apply to her because she's the

3   general counsel for Exelon?  I don't know.

4          THE COURT:  So Mr. Garland, in general, I think part

5   of the concern that you're raising involves things that deal

6   with general misconduct that you believe is happening at

7   Exelon that may or may not be something appropriate for

8   criminal or other authorities to be investigating.

9          In a civil case, it is the plaintiff who marshals the

10  evidence and establishes the elements of their claim.  The

11  judge does not conduct an independent investigation to

12  determine if the plaintiff's claims have merit.

13         Now, as a civil plaintiff, you don't have the same

14  right to counsel that a defense -- well, a defendant in a

15  criminal case may have, but if you're concerned about bringing

16  the case on your own, you certainly have the option of going

17  to see if you can either retain an attorney or ask an attorney

18  to take your case pro bono, which means without charging you,

19  or, as a plaintiff in a case, if you can't afford an attorney,

20  we have a rule in our court that lets you file a financial

21  affidavit showing that you can't afford an attorney to

22  represent you.  And then there are volunteer attorneys who can

23  be assigned to take your case pro bono.

24         So to the extent your concern is that you're pro se

25  and you're not sure how to proceed, for better or for worse,

1  the rule is that a civil plaintiff doesn't have a right to

2  counsel, and often, people do represent themselves and have to

3  go through this whole process on their own, or, of course, you

4  could either take steps to find your own attorney, or if you

5  submit a financial affidavit showing that you can't afford the

6  cost of pursuing the case, you can file a motion for attorney

7  representation.  Those are kind of your options.

8         With respect to your desire to have the denial of

9  your motion to remand appealed and considered, in general,

10  that's what's called an interlocutory order, and it would not

11  be subject to review.

12         In order to obtain an appeal, you would have to

13  follow procedures set out in the statute Title 28, United

14  States Code, Section 1292, I believe, which governs

15  interlocutory orders.  And there's a procedure there where you

16  ask first here for a question to be certified for

17  interlocutory appeal.  And then if that is not granted, then

18  the procedure is that it can be filed with the Court of

19  Appeals under that same statute to ask for interlocutory

20  appeal.

21         So those are your options, but certainly here, you're

22  correct, this case was initially assigned to a different

23  judge; it was transferred to me.  There was a motion to remand

24  that was fully briefed right at the time that COVID happened.

25  There was a delay due to COVID as well as just trying to catch

1    up afterwards.  The motion was denied.

2         There was a motion for reconsideration which, again,

3    was denied.  There was an opportunity that was provided for an

4    amended complaint to be filed, if I recall correctly, and a

5    date by which that would need to be filed or else the most

6    recent complaint would be deemed the current one.

7         I believe that after our status hearing, the motion

8    that had been most recently filed or, rather, the amended

9    complaint that was most recently filed was considered the

10   operative complaint.

11        And once the motion for reconsideration was denied

12   after briefing on that and after it was established that there

13   wouldn't be a further amended complaint, the motion to dismiss

14   was filed by the defendants, a briefing schedule was set, and

15   we've sort of gone from there.

16        So this is the first that I'm hearing from you that

17   you want to seek interlocutory appeal which you can certainly

18   seek under that statute, but the concern is there were dates

19   set here in front of me to move the case forward with respect

20   to the motion to dismiss, and I didn't hear anything from you

21   that you were going to oppose that motion.  So I need to

22   resolve that issue because there is a motion to dismiss.

23        The defendants are taking the position that since you

24   did not respond, the motion to dismiss should be granted based

25   on the current record.

1    Given that you are pro se, my preference would be not

2  to do that, which is why I set this hearing, to give you an

3  opportunity to explain to me why you didn't respond and, if

4  appropriate, give you an opportunity to do so.

5    From what I'm hearing, it sounds like you don't

6  particularly want that opportunity because you're concerned

7  that you, as a pro se person, would not have the ability to

8  respond to the motion to dismiss that was filed by the

9  defendants, but that is the next step in the procedure would

10  be to respond to their motion to dismiss.

11    MR. GARLAND:  Actually, you already denied my request

12  for interlocutory appeal.

13    I want to tell you that I'm not filing -- I'm not

14  trying to contest that.  I'm trying to tell you that I have a

15  writ of certiori ready, almost nearly finished, to file or a

16  petition for extraordinary writ which should be granted

17  under -- well, I guess I'd say the supplementary review power

18  conferred on the courts by Congress under the All Writs Act is

19  meant to be used only in the exceptional case where there is a

20  clear abuse of discretion or usurpation of judicial power --

21  (inaudible) -- justified a writ.  Such a writ, although not

22  lightly invoked, is appropriate in a case where the litigant

23  can show that the trial court has committed an error so

24  serious that it amounts to an abuse of the trial judge's

25  authority.  That's under Alsimo in the Seventh Circuit, and

1    there may be more.

2           THE COURT:  So Mr. Garland, you're planning to file

3    that with the Court of Appeals?

4           MR. GARLAND:  Yeah.  I'm just letting you guys know

5    that that's what I'm doing probably in ten days here and that

6    that's why the delay occurred.

7           And the delay occurred also because of the

8    circumstances in my personal life with my two friends' deaths

9    and then the fact that I had to put together and do an

10   investigation and put together these pieces of a connection

11   between Exelon, the law firm, and yourself and the recent

12   cases that occurred with Morgan Lewis in California and then

13   recently with McDonald's and now this particular case, which

14   based on the two other cases, McDonald's and the one in

15   California, it would be something that the Court of Appeals

16   would review in light of what's been occurring within the law

17   firm and then the conduct of James Looby, Stephanie Sweitzer,

18   Exelon, and then, of course, yourself.

19          So that's what I'm letting you guys know.  And if I'm

20   incorrect and I delayed for some reason, which the delay is --

21   you delayed my order denying my remand.  It was 280 days, so

22   my delay is not anywhere close to your delay.  So for you to

23   say that I was delayed, it's not a benefit to me to delay

24   anything because I'm already delayed as it is 666 days.  So

25   I'm not harming anybody by delaying --

 1            THE COURT:  Okay.  So also, Mr. Garland, just so that
 2    you know, when you seek interlocutory appeal, whatever
 3    mechanism that you use to do it, it doesn't stay the
 4    proceedings in the district court, so I do have to go ahead.
 5    And if you want, I'll set a new day for -- a new date for your
 6    motion to dismiss to be due based on your representations of
 7    what you've been working on and that you've had deaths close
 8    to you which I'm sorry to hear about, but it doesn't stop the
 9    proceedings in the district court because you're seeking
10    appeal in the Court of Appeals unless there's a formal stay
11    that is entered.
12            That's just how the rules operate when you're talking
13    about an interlocutory -- which means before the end of the
14    case -- ruling.
15            So you can go ahead and file whatever you feel you
16    need to file with respect to the concerns that you've raised
17    certainly, but I do need to set a schedule for the finishing
18    of the briefing of the motion to dismiss.
19            If you don't wish to oppose the motion to dismiss,
20    then the case will be dismissed.  Then it would no longer, I
21    suppose, be an interlocutory appeal because judgment would be
22    entered; however, I think that may not serve the end that
23    you're looking for with your remand back to state court.
24            So what I'm going to do today, Mr. Garland, is I'm
25    going to allow another short period of time, unless you tell

1    me that you're just not going to oppose the motion to dismiss,

2    for the filing of an opposition to the defendant's motion.

3            MR. GARLAND:  I'll oppose it.

4            THE COURT:  And then what you could do also, if

5    you're going to be seeking an appeal in the Court of Appeals,

6    you can either ask me or you can ask them for proceedings to

7    be stayed and see what sort of response you get.  That will

8    depend on the procedure that you're following.  Okay?

9            So in light of the holidays and in light of the fact

10   that you're saying you're going to file something in ten days

11   seeking review, I think under the circumstances, the most I

12   can do would be to give you until January 7th to file an

13   opposition if you want the opportunity to file an opposition.

14   If you don't, then I would have to decide it based on just the

15   one-sided motion to dismiss without hearing your opposition.

16           Do you want an opportunity to respond to the

17   defendant's motion to dismiss?

18           MR. GARLAND:  Yeah.  I'll either respond by that date

19   or file the petition to the Court of Appeals with -- and a

20   stay -- request to issue the stay of the proceeding.

21           THE COURT:  So I will set a deadline then of January

22   7th for that, just getting a little bit past the holidays.

23   And if there is an opposition to the motion to dismiss, then

24   the defendants will need to reply 14 days later which would be

25   January 21st.

1    And then you can do whatever you feel is appropriate

2    that you do need to do with respect to your petition, but,

3    again, the general rule is that seeking interlocutory review,

4    which means review before the case is over, does not stay the

5    proceedings in the district court.

6    I will just say, since it's been mentioned on the

7    record, that I'm certainly not aware of any conflict that

8    would require my recusal from this case.

9    I know you mentioned, I think, the fact that I do

10   know an attorney.  I believe she's at Morgan Lewis.  Frankly,

11   I haven't spoken to Mikaela Shaw in quite some time to know

12   whether she is still there or not.  I know she did leave for a

13   period of time, and frankly, I don't know whether she went

14   back.  But to be clear, she was is an extern for a semester in

15   my chambers while she was a law student several years ago well

16   outside the time period when it would typically be expected

17   that a judge would not have a former extern, law clerk, or

18   other person who worked in their chambers appear in front of

19   them.

20   I'll also note I don't believe that Ms. Shaw has ever

21   filed an appearance in this case.  I'm fairly certain, looking

22   at the docket, that she has not.  And typically, the fact that

23   somebody who is a former law clerk or extern works

24   subsequently at a firm, or, for example, the US Attorney's

25   Office, would be another example, wouldn't disqualify the

1    judge from hearing any cases involving that firm.

2          At a minimum, in order to have a closer look at

3    potential conflicts, it would typically be that the attorney

4    has filed an appearance in the case or is somehow working on

5    the case, which I have no reason to believe is the case based

6    on a scan of the docket.

7          But certainly if there's a reason to believe that

8    Ms. Shaw filed something or signed off on a paper in this

9    case, I can take a look to see what those circumstances are,

10   but the mere fact that she works at a firm, particularly a

11   very large firm like Morgan Lewis, after having externed

12   several years ago while she was a law student would not

13   prevent a judge from hearing any cases involving that firm.

14         I also am not aware of any other connection that I

15   might have to the defendants in this case that would pose a

16   potential conflict of interest or to any of the attorneys who

17   have actually appeared.  So I'll just make clear that I'm not

18   aware of anything along those lines, and I haven't heard

19   anything from Mr. Garland today other than the reference to

20   the former extern from, again, several years ago who I don't

21   believe has appeared in this case in any manner.

22         So I will leave that there, and we'll proceed

23   forward.

24         I haven't heard anything from the defendants.

25         Counsel, you heard me give a final schedule for

1    Mr. Garland.  Do you have anything to add at this point?

2         MR. LOOBY:  Yes, Your Honor.  This is James Looby.

3    I'll be very brief.

4         I obviously can't respond to everything that

5    Mr. Garland said today over the past 50 minutes, but I want to

6    go on record to be very clear that we dispute all of

7    Mr. Garland's allegations of improper conduct against me, my

8    colleagues, my firm, my clients, as well as the Court.  There

9    is simply no basis for those serious allegations that

10   Mr. Garland has made, and, you know, I find them very

11   troubling personally for a variety of respects.  I'm certainly

12   I'm not going to go through and respond to all of them.  A lot

13   was said today, but I want to be clear that we dispute all of

14   that.

15        Putting that aside, Ms. Shaw has not filed an

16   appearance in this matter, so I want to make that clear as

17   well.

18        And then just as a last piece, to the extent

19   Mr. Garland does decide to oppose our motion which we think is

20   meritorious, I would just ask if we could have 21 days instead

21   of 14 to file a reply, just given the nature of the material

22   and the motion and the five -- Mr. Garland's complaint which,

23   as you know, is over 400 pages including exhibits.  So if we

24   could just have until January 28th instead of January 21st.

25        THE COURT:  I will allow the time until January 28th.

1    And as I said, if Mr. Garland is pursuing other avenues, that

2    may be going on at the same time as well.

3          MR. LOOBY:  Understood.

4          MR. GARLAND:  So for the record, I'm not trying to --

5    again, what I said on the record is that I'm not the one to

6    decide whether something was done wrong or not.  I just -- the

7    issues were never addressed that I brought up.

8          So if Judge Wood didn't address the issues and they

9    were clearly in three of my papers, then I don't know if

10    they're correct or not.  So that's what I'm trying to say.

11    And I can't -- I'm not the judge on that and I don't make the

12    decisions, so I just need someone to address them, and then we

13    can talk about them.  And if I'm right, I'm right.  Or if

14    there's something wrong, then we can correct it, but based on

15    my knowledge, I thought some things were wrong.

16          So that's what I'm trying to get at.  I'm not

17    accusing anybody of anything.  I saw some things that were

18    pretty factual.  I didn't get a chance to get them addressed

19    under Judge Wood.  So I'm just looking to get those addressed,

20    and we'll go from there.

21          THE COURT:  Okay.  So here's what I'd like to do.

22    I'm going to set another telephonic hearing for after

23    January 7th which is the date by which Mr. Garland's response

24    to the motion to dismiss would need to be filed.  And so we'll

25    know the state of things by then.  I won't have any reply yet

1    from the defendants, but we'll at least know what his response

2    is going to be.  And I'll set that for the week of January

3    10th which is the immediate week after the response is due.

4             David, can you provide a telephonic hearing date and

5    time?

6             THE CLERK:  January 13th at 11:00.

7             THE COURT:  And that will be for a telephone hearing.

8             Is there anybody that has a conflict with that date

9    and time?

10            MR. LOOBY:  That works for me, Your Honor.  This is

11   James Looby.

12            MR. GARLAND:  Yeah, that's fine.

13            THE COURT:  Okay.  So again, Mr. Garland, if, for

14   some reason, you are not able to file anything by January 7th,

15   you should file a motion asking for more time to do so and

16   explaining what the situation is so that everybody knows

17   whether it's just that you missed the date or you decided that

18   you don't want to proceed on the motion to dismiss and you're

19   not going to oppose it or whether you've had some personal

20   circumstance, whatever it is.

21            And that's the same requirement that would apply to

22   any attorney that appears, that they would need to explain why

23   they're not going to file by a specific date and either ask

24   for more time or some other relief.  Okay?

25            Okay.  I need to move on to the next cases that are

1    on my call for this morning.  I think that addresses the

2    issues that were to be raised today, and we'll see where

3    things are in a few weeks with Mr. Garland's matter.

4            MR. GARLAND:  Thank you.

5            MR. LOOBY:  Thank you, Your Honor.  Have a good day.

6      (Proceedings adjourned at 9:55 a.m.)

7

8                 C E R T I F I C A T E

9

10

11       I, Brenda S. Tannehill, certify that the foregoing is

12   a complete, true, and accurate transcript from the record of

13   proceedings on December 14, 2021, before the HONORABLE

14   ANDREA R. WOOD in the above-entitled matter.

15

16

17   */s/Brenda S. Tannehill, CSR, RPR, CRR*       *12/20/2021*

18      Official Court Reporter             Date
        United States District Court

19      Northern District of Illinois
        Eastern Division

20

21

22

23

24

25